**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 7, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CAITLIN VILLA,

    Defendant - Appellant.

No. 15-8053
(D.C. No. 2:15-CR-00005-ABJ-2)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McKAY**, and **BALDOCK**, Circuit Judges.
_____

Without a plea agreement, Defendant Caitlin Villa pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B). Based on its finding that Villa was responsible for at least 500 grams but less than 1.5 kilograms of methamphetamine, the district court sentenced Villa to 69 months and 6 days' imprisonment. Villa challenges the reliability of the evidence the district court used to calculate the amount of methamphetamine for which she was responsible. Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

_____
[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Villa entered a blind plea to an indictment charging her with participating in a conspiracy with co-Defendants Shane David Fischer and Ricardo Miranda. The alleged conspiracy spanned from March 2014 through October 2014 and involved the distribution of 50 grams or more of methamphetamine.

In the Presentence Investigation Report (PSR), the United States Probation Office (USPO) calculated that Villa was responsible for 1,550 grams of methamphetamine based on investigative reports detailing information from a number of witnesses:

- In a proffer, Mary Barker said she purchased one ounce of methamphetamine from Fischer while she was dating him. After they broke up, she purchased 3.75 ounces of methamphetamine from Fischer from the middle of July to July 31, 2014. Although Barker purchased methamphetamine from Fischer, she said Villa was Fischer's source. The PSR thus calculated that Villa was responsible for 4.75 ounces or **135 grams**.

- In an interview with law enforcement, Natalie Heigis said she purchased two to three ounces of methamphetamine a week from Fischer during the two months before her arrest on August 6, 2014. Heigis also said Villa was Fischer's source during this time period. Using the estimation of two ounces per week for eight weeks, the PSR calculated that Villa was responsible for 16 ounces or **453 grams**.

- Kristina Chavez told law enforcement that she purchased two ounces, or **56 grams**, of methamphetamine from Fischer, sourced by Villa, from late June to July 2014.

- Mary Atwood said she purchased two ounces of methamphetamine from Fischer per week, sourced by Villa, from January 2014 to July 4, 2014. The PSR noted that Fischer was incarcerated from December 2013 to May 8, 2014, making it impossible that Atwood purchased methamphetamine from Fischer until after he was released. The PSR thus calculated that Atwood bought two ounces per week for only six weeks, resulting in 12 ounces or **340 grams** attributable to Villa.

- Co-Defendant Miranda stated in a proffer that he met Fischer in February 2014 and purchased 1/16th of an ounce, or 1.75 grams, of methamphetamine from Fischer. The PSR noted that Miranda could not have met Fischer in February

2

because Fischer was not released until May 8, 2014 and, thus, the PSR did not include this amount in its calculation. The second time Miranda met with Fischer, he purchased two ounces of methamphetamine. Sometime later, Miranda, Fischer, and Villa discussed methamphetamine trafficking. Miranda began obtaining approximately four ounces of methamphetamine per week through July 2014. The PSR calculated Miranda received four ounces for four weeks, plus the earlier two-ounce purchase, for a total of 18 ounces or **510 grams** of methamphetamine. In late July 2014, Miranda purchased methamphetamine directly from Villa on three occasions, totaling two ounces or **56 grams**.

The PSR thus calculated that Villa was responsible for 1,550 grams of methamphetamine, but because the methamphetamine quantity was so close to the threshold between base offense level 32 (1.5 to 5 kilograms) and level 30 (500 grams to 1.5 kilograms), the PSR used the lower range.

Villa submitted several somewhat-hard-to-follow objections to the PSR. As best as we can understand, the objections state the following:

- Villa challenged the ounce of methamphetamine that Barker purchased from Fischer while Barker was dating Fischer because the PSR did not indicate when the sale occurred. As to the 3.75 ounces from the middle to the end of July, Villa explains that she also dated Fischer but that she stopped providing Fischer with methamphetamine after they broke up on July 4, 2014. Thus, Villa objected to the whole 135 grams.

- Villa disputed the amounts attributed to her from Heigis. Villa explained that Heigis "was arrested on 8/6/14 and Villa had cut off Fischer in July. She was not one of Fischer's source [sic] in June because Fischer and Villa went to most of his dealings because she didn't trust him to only trade meth for cash and not personal interaction because dealer and client [sic]."

- Villa admitted that the PSR's "Paragraph 10 is completely true." Thus, Villa admitted that she provided Fischer with the **56 grams** of methamphetamine that he sold to Chavez from late June to July 2014.

- As to the timeframe during which Atwood purchased methamphetamine from Fischer through Villa, Villa "agree[d] it was only approximately six weeks, but she believes it was about an ounce a week for 170 grams." Villa asserted that

3

Atwood's testimony verified that Villa and Fischer broke up on July 4, 2014.[1] Thus, Villa admitted she provided Fischer with the **170 grams** he then sold to Atwood from June to July 4, 2014, when Villa and Fischer broke up.

- Villa argued Miranda's testimony that he met Fischer when Fischer was still incarcerated shows that he and the other witnesses were lying. She next pointed out the improbability that Miranda would first purchase 1/16th of an ounce and then jump to purchasing two ounces. But she argued that the PSR was "not being conservative enough" for the four weeks Miranda purchased from Fischer and Villa—instead of four ounces, Villa said Miranda purchased two ounces per week. Further, she admitted Miranda purchased an additional ounce, but not two, from Villa in late July 2014. Villa concluded "Miranda should be nine ounces," thus admitting to nine ounces or **255 grams**.

Although Villa seems to calculate in her Objections that she was responsible for "406 grams," our calculations show that she admitted to 481 grams of methamphetamine. The USPO in the Addendum to the PSR noted Villa's objections but maintained that Villa continued to supply methamphetamine to Fischer through July and August 2014. It thus asserted that Villa was responsible for at least 500 grams to 1.5 kilograms of methamphetamine.

At the sentencing hearing, Detective Craig Hutchinson testified about the investigation. He briefly described the people he and other law enforcement officers interviewed and the information they gathered. Villa challenged Hutchinson's testimony as unreliable hearsay that violated her Sixth Amendment right to confront witnesses, but the district court overruled her objection, noting that neither the Sixth Amendment's Confrontation Clause nor the Federal Rules of Evidence apply at sentencing hearings.

---

[1] Villa wrote in this objection that she and Fischer ended their relationship on July 14, 2014, but because she consistently argues elsewhere that they broke up on July 4, 2014, we believe she meant July 4.

4

The following is a summary of Hutchinson's relevant testimony regarding the investigation:

- Hutchinson interviewed Barker at the end of July or beginning of August 2014 at the Laramie County Detention Center. Barker identified Fischer as a methamphetamine source in the Cheyenne, Wyoming area and said his source of supply was a female named Caitlin. In a proffer taken August 21, 2014, Barker added that she dated Fischer for one week in July 2014 and purchased approximately 135 grams of methamphetamine from him. She said his source was Fischer's ex-girlfriend Caitlin, who Hutchinson identified as Villa.

- Hutchinson interviewed Heigis at the Laramie County Detention Center on September 18, 2014. Hutchinson reiterated the amounts quoted in the PSR and testified that during the two months before Heigis's arrest, Heigis purchased approximately 453 grams of methamphetamine from Fischer and said Fischer's source was Villa. On cross-examination, Hutchinson said Heigis had admitted to buying two to three ounces of methamphetamine for $250, but he did not clarify with Heigis whether that was per ounce or total. Either way, Villa pointed out that $250, whether per ounce or for two to three ounces, was far less than the $900 per ounce that Miranda said Villa charged him.

- On October 9, 2014, Hutchinson interviewed Chavez. Chavez said she purchased 56 grams of methamphetamine from Fischer and identified his supplier as Villa.

- Hutchinson testified that Special Agent Tafoya with the Division of Criminal Investigation interviewed Atwood on January 15, 2015. Atwood told the agent that she purchased 340 grams of methamphetamine from Fischer, sourced by Villa. Villa argued that Hutchinson could not form an opinion about Atwood's credibility because he did not interview Atwood, but the district court overruled the objection.

- Hutchinson interviewed co-Defendant Miranda on December 2, 2014. Miranda told Hutchinson he met Fischer in January 2014 and purchased two ounces of methamphetamine from Fischer and Villa. He began purchasing methamphetamine daily or every other day, approximately four ounces a week, from Fischer and Villa when both were present. Miranda, Fischer, and Villa would all discuss the prices for which Miranda should sell the methamphetamine. Beginning on July 4, 2014, Miranda purchased directly from Villa and stopped purchasing from Fischer. During cross-examination, Villa pointed out that Fischer was incarcerated until May 8, 2014. Hutchinson admitted that he did not know when Fischer was incarcerated and that he did

5

not interview Fischer. Hutchinson explained that he generally asks for estimated rather than exact dates from witnesses.

- While Hutchinson was present, another detective interviewed Tanisha Valero. She purchased an unidentified amount of methamphetamine from Fischer near the end of June or beginning of July 2014 before her arrest on July 10, 2014. Valero told the detective that Fischer identified Villa as his source of methamphetamine.

Hutchinson also testified that he executed a search warrant on a lock box inside a gold GMC pickup truck that several witnesses said Fischer had purchased from Villa and that had been towed from an alley outside Chavez's house. He also searched a storage unit rented under Villa's name that Miranda and Chavez identified as Villa's. Although Hutchinson found drug paraphernalia inside the truck, he did not find any methamphetamine in the truck or storage unit. On cross-examination, Hutchinson admitted that none of the witnesses were placed under oath, all were potential targets in drug investigations, and the witnesses did not have an opportunity to review their statements or recordings. Villa also challenged Hutchinson on several pieces of information that he did not verify during the course of his investigation, such as allegations from Miranda that Fischer allegedly fired a weapon around the manager of a trailer park and another instance in which Fischer allegedly fired rounds at passing cars on the interstate.

Villa then presented Molly Martinez, who admitted that she used methamphetamine but did not have any knowledge that Villa was supplying methamphetamine to Fischer. She explained that Villa was afraid of Fischer. She also

6

testified that she came with Villa to Wyoming sometime in the middle to end of July 2014 to recover the truck that Villa had sold to Fischer.

In its oral ruling, the district court explained that, because the case "involves a so-called dry conspiracy in that there are not large amounts of drugs that were seized as part of the arrest," it had to "rely upon the information that was provided to law enforcement through statements made during their investigation by those who were acquainted with the [sic] or alleged to be acquainted with the activity." Sent. Tr. at 116. The district court noted that Miranda and Atwood incorrectly described the dates they began purchasing methamphetamine from Fischer because Fischer was still incarcerated at the time, and further noted that Hutchinson was not aware that Fischer was incarcerated. *Id.* at 16–17. The district court stated, however, that "the people that were interviewed and made statements against their interest were persons who, including Miss Barker, were making statements against their criminal interest in that they were customers, users of the methamphetamine, and had every reason to minimize their involvement with Mr. Fischer, Mr. Miranda, and Ms. Villa." *Id.* at 117. The district court stated there was "a substantial amount of statements by and between various individuals interviewed by Officer Hutchinson that support the activities that were occurring and the conspiracy in this case." *Id.* at 118. Although it noted some inconsistencies, the district court said "there is less dispute with regard to various events that occurred during the summer of 2014 incident to the drug activity of Mr. Fischer, Mr. Miranda, and Miss Villa." *Id.* Thus, the district court concluded:

Miss Villa did furnish methamphetamine to Mr. Fischer and to Mr. Miranda. I accept the information in that regard and believe that the, as a supplier and source of methamphetamine, high-quality methamphetamine, by the way, that was delivered in this matter, that the drug quantity of greater than 500 grams but less than 1.5 [kilograms] is a fair and accurate characterization in this matter, and that will be the finding of the Court.

*Id.* at 119. The district court thus applied a base offense level of 30 for the 500 grams to 1.5 kilograms of methamphetamine. It then subtracted three levels for acceptance of responsibility for a total offense level of 27. With her criminal history category of I, the sentencing range was 70–87 months. The district court sentenced Villa to 69 months and 6 days' incarceration.

## II.

Villa's primary concern on appeal is the reliability of the evidence the district court considered in determining the quantity of methamphetamine attributable to her. Although Villa pleaded guilty to an indictment charging only "50 grams or more" of methamphetamine, a district court "may look beyond the charges alleged in the indictment" and consider drugs that were part of the same course of conduct or common scheme and plan to calculate a defendant's base offense level. *United States v. Hamilton*, 587 F.3d 1199, 1221 (10th Cir. 2009) (citation omitted); *see also* U.S.S.G. § 2D1.1 cmt. n. 5 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level."). The United States must prove the relevant drug quantity by a preponderance of the evidence. *United States v. Foy*, 641 F.3d 455, 468 (10th Cir. 2011). Because the Federal Rules of Evidence do not apply at sentencing, Fed. R. Evid. 1101(d)(3), the term "evidence" in the sentencing context "refers to any

8

information that meets the standards of reliability found in § 6A1.3." *United States v. Beaulieu*, 893 F.2d 1177, 1181 n.7 (10th Cir. 1990). Thus, a sentencing court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has *sufficient indicia of reliability to support its probable accuracy*." U.S.S.G. § 6A1.3 (emphasis added). When, as here, the United States has not seized the actual drugs involved, the district court may rely on an estimate of the drug quantity to establish the guideline offense level "so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005) (internal quotation marks omitted). The "need to estimate drug quantities" is not, however, "a license to calculate drug quantities by guesswork." *United States v. Richards*, 27 F.3d 465, 469 (10th Cir.1994) (internal quotation marks omitted).

We review the district court's factual findings regarding drug quantities for clear error and will reverse only if those findings were "without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *Foy*, 641 F.3d at 468 (citation omitted); *see also United States v. Cardenas–Alatorre*, 485 F.3d 1111, 1119 (10th Cir. 2007) (holding that, for a finding to be clearly erroneous, the "finding must be more than possibly or even probably wrong; the error must be pellucid to any objective observer"). The district court's determination that evidence bears sufficient indicia of reliability is also a factual matter we review for clear error. *United States v. Hooks*, 65 F.3d 850, 854 (10th Cir. 1995). We review *de novo* the district

9

court's legal conclusions, including those pertaining to the Guidelines, *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008), and whether the sentence or consideration of evidence violated the Sixth Amendment, *United States v. Bustamante*, 454 F.3d 1200, 1202 (10th Cir. 2006).

III.

Villa argues (1) the evidence the district court considered lacked sufficient indicia of reliability; and (2) the Confrontation Clause of the Sixth Amendment as construed in *Crawford v. Washington*, 541 U.S. 36 (2004), should apply at sentencing. Villa acknowledges that Tenth Circuit precedent forecloses her Sixth Amendment argument. In *Bustamante*, we reiterated our pre-*Crawford* conclusion that the Confrontation Clause does not apply at sentencing and held that *Crawford* does not require otherwise. *Bustamante*, 454 F.3d at 1202–03. This panel is not free to change the law as Villa requests. "[O]ne panel cannot overrule the judgment of another panel of this court . . . absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Barber v. T.D. Williamson, Inc.,* 254 F.3d 1223, 1229 (10th Cir. 2001) (internal quotation marks omitted).

We will thus move to Villa's argument that the evidence the district court relied on at sentencing failed to meet the "sufficient indicia of reliability" requirement of U.S.S.G. § 6A1.3. Villa's concern centers on the "hearsay upon hearsay" that Hutchinson testified to, but "a district court may rely on hearsay evidence as long as the evidence is sufficiently reliable." *United States v. Caiba–*

*Antele*, 705 F.3d 1162, 1165 (10th Cir. 2012); *see also United States v. Basnett*, 735 F.3d 1255, 1261 (10th Cir. 2013) ("[T]he district court could rely on double hearsay as long as the statements contained minimal indicia of reliability.").[2]

The district court found that "the drug quantity of greater than 500 grams but less than 1.5 [kilograms] is a fair and accurate characterization in this matter."[3] Much of the evidence the district court considered bore sufficient indicia of reliability, particularly in light of Villa's own admissions through her Objections to the PSR. Villa admitted she was responsible for the 56 grams of methamphetamine that Fischer sold to Chavez from late June to July 2014; the 170 grams that Fischer sold to Atwood from June to July 4, 2014; and the 255 grams Miranda purchased either from Fischer and Villa or directly from Villa in June and July 2014.[4] With these three amounts, Villa admitted to 481 grams of methamphetamine. But her admissions did more than establish a certain quantity. Villa effectively admitted she

[2] Unlike cases where the out-of-court declarations are from an unidentified informant, which require "good cause for the non-disclosure of the informant's identity" and "sufficient corroboration by other means," the Sentencing Guidelines here, with known out-of-court declarants, direct us to ensure only that the hearsay evidence is reliable. U.S.S.G. § 6A1.3 cmt.

[3] Although the district court stated Villa was responsible for "high-quality methamphetamine" without having heard evidence as to the drug's quality, we are concerned here with the quantity, not quality, of the methamphetamine. As we explain, the district court did not clearly err in concluding that the evidence regarding the drug quantity was reliable.

[4] Atwood and Miranda stated that they purchased methamphetamine from Fischer during a time in which Fischer was incarcerated, but this inaccuracy in the dates does not detract from Villa's own admission, which shows that, at least to the amounts she admitted, the witnesses supplied Hutchinson with reliable information.

(1) provided methamphetamine (2) to Fischer (3) in June and up to July 4, 2014. Her admission lends sufficient reliability to Heigis' claim that Heigis likewise purchased methamphetamine from Fischer, sourced by Villa, during this time frame. Heigis told Hutchinson she purchased two to three ounces of methamphetamine per week during the two months prior to her arrest on August 6, 2014. Because we know Villa supplied methamphetamine at least during June and up to July 4, 2014, the evidence is sufficiently reliable to find that, conservatively, Villa was responsible for the two ounces per week for four weeks that Fischer sold to Heigis, resulting in an additional eight ounces or 227 grams. This amount, added to the amount Villa admitted, results in 708 grams, which is well within the 500 grams to 1.5 kilograms range the district court found.

An even more conservative estimate likewise reaches past the 500 gram minimum to support the district court's conclusion. Cross-examination revealed that Heigis said she purchased two to three ounces of methamphetamine for $250, whereas Miranda said Villa charged him $900 per ounce. Hutchinson did not know if Heigis meant that she purchased two to three ounces for $250 total or $250 per ounce, but an even more conservative calculation based on the testimony is that Heigis purchased $250 worth of methamphetamine from Fischer each week for four weeks. *See United States v. Cook*, 949 F.2d 289, 295–96 (10th Cir. 1991) (affirming the district court's estimate of a drug quantity based on witness testimony that the defendant sold a specified dollar amount of drugs over a specified time period); U.S.S.G. § 2D1.1, cmt. n.5 (noting that in estimating the quantity of the controlled

12

substance, "the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, [and] similar transactions in controlled substances by the defendant"). Assuming Villa provided Fischer with methamphetamine at $900 per ounce, as Miranda quoted, the $250 worth of methamphetamine was .28 ounces, or approximately eight grams. Even if Heigis only purchased eight grams for four weeks from Fischer by way of Villa, this results in 32 grams. This very conservative estimate added to Villa's own admissions results in a combined total of 513 grams.

But because we are considering only whether the district court clearly erred, we think the district court could appropriately make a more liberal calculation. Hutchinson himself conducted or was present for most of the interviews and could therefore form an opinion as to the veracity of those witnesses. *See Caiba–Antele*, 705 F.3d at 1166 (holding the evidence relied on by the district court manifested sufficient indicia of reliability, in part because "[t]he detectives who testified regarding the sexual assault charges had observed the victims first-hand and were able to form reasoned opinions regarding their veracity").[5] Further, the fact that a number of witnesses provided the same information adds to each individual's

---

[5] Villa complained that Hutchinson could not form an opinion of Atwood's veracity because he did not interview her. *See United States v. Fennell*, 65 F.3d 812, 813 (10th Cir. 1995) (holding that evidence the defendant fired a machine gun at his girlfriend lacked sufficient indicia of reliability because it was uncorroborated and the preparing officer, who spoke to the defendant's girlfriend only over the phone, "did not have an opportunity to observe her demeanor during the interview and therefore could not form any opinion as to her veracity"). But Villa's admissions in her Objections to the PSR provide the necessary indicia of reliability to rely on the quantities Atwood quoted, regardless of who interviewed her.

reliability. Barker, Heigis, Chavez, Atwood, Miranda, and Valero all said that Villa provided methamphetamine to Fischer. Heigis, Chavez, and Atwood said Villa provided Fischer with methamphetamine in June and at least up to July 4, 2014. As the district court noted, these individuals made statements against their interest and "had every reason to minimize their involvement." Sent. Tr. at 117. The district court could rely on the amounts these individuals quoted to estimate Villa's involvement, even though the investigators did not find any methamphetamine, because the estimates were based on the facts of this case rather than general averages. *Cf. United States v. Garcia*, 994 F.2d 1499, 1508–09 (holding that a district court's finding was clearly erroneous when, in determining the amount of marijuana involved in the defendant's two shipments by car from Mexico, the district court relied on an FBI agent's testimony of the "average size shipment" from the agent's other cases). The district court did not clearly err in finding that the evidence it considered was sufficiently reliable and that Villa was responsible for more than 500 grams but less than 1.5 kilograms of methamphetamine. The district court's findings are not "without factual support" and we are not "left with the definite and firm conviction" that the district court erred. *Dalton*, 409 F.3d at 1251 (internal quotation marks omitted). We affirm the district court's judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge

14